UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MEGHAN M. SAFFRON CAMPBELL,

                           **Plaintiff,**

v.                                                 18-CV-768

**COMMISSIONER OF SOCIAL SECURITY,**

                           **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 16. Meghan M. Saffron Campbell ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Social Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 10, 14. For the following reasons, Plaintiff's motion (Dkt. No. 10) is granted to the extent it seeks remand, and the Commissioner's motion (Dkt. No. 14) is denied.

## BACKGROUND

On October 15, 2014, Plaintiff protectively filed for SSI and Disability Insurance Benefits ("DIB"), alleging that she became disabled on July 30, 2014, due to chronic obstructive pulmonary disease ("COPD"), menorrhagia, esophageal reflux,

hyperlipidemia, a fibroid condition, high blood pressure, benign essential hypertension, and eczema. Tr. at 16, 175-83, 220.[1] Plaintiff's applications were denied at the initial level and she requested review. Tr. at 16. On February 10, 2017, Administrative Law Judge William M. Manico ("the ALJ") conducted a hearing. Tr. at 35-84. Plaintiff, who was represented by counsel, testified by videoconference from Buffalo, NY, and the ALJ presided from Alexandria, VA. Tr. at 16, 37-76. An impartial vocational expert ("VE") also testified. Tr. at 77-83. On April 6, 2017, the ALJ issued a decision in which he found that Plaintiff was not disabled and therefore, not eligible for benefits. Tr. at 16-34. The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner. Tr. at 1-7. Plaintiff thereafter commenced this action seeking review of the Commissioner's decision. Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. §

---

[1]Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 7.

2

404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals a Listings criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the

4

evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process described above. *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 30, 2014, her alleged onset date. Tr. at 18. At step two, he found that Plaintiff had the following severe impairments: COPD, migraine headaches, depression, and anxiety/post-traumatic stress disorder ("PTSD"). Tr. at 18-19.[2] At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings criterion, giving special consideration to Listing 3.02 (Chronic Pulmonary Insufficiency), 4.04 (Ischemic Heart Disease), 12.04 (Depressive, Bipolar and Related Disorders), and 12.06 (Anxiety and Obsessive Compulsive Disorders). Tr. at 19-21.

Next, the ALJ found that Plaintiff retained the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b), but with the following exceptions: she should avoid even moderate exposure to extremes of heat, cold, humidity, as well as odors, dust, gases, fumes, etc.; she should avoid exposure to hazards and should not do

---

[2] This Court presumes the parties' familiarity with plaintiff's medical history, which is summarized at length in the papers.

jobs which require her to climb ladders, ropes, or scaffolds; she should not perform jobs which require her concentrated exposure to loud noises; she should be allowed to wear sunglasses in the workplace if she feels the need; and she retains the RFC to perform unskilled work which would allow her to have regular work breaks approximately every two hours. Tr. at 21-28.

Continuing to the fourth step, the ALJ found that Plaintiff was unable to perform her past relevant work. Tr. at 28. Based on Plaintiff's age (46 years old), education (high school graduate), work experience with the aforementioned RFC, the ALJ found that she could perform work that exists in significant numbers in the national economy, specifically, the jobs of photocopy machine operator (DOT No. 207.685-014) and mail clerk (DOT No. 209.687-026). Tr. at 29. Accordingly, concluded the ALJ, Plaintiff was not under a disability from July 30, 2014, through the date of his decision, April 6, 2017. Tr. at 29-30.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings. Dkt. Nos. 10, 14. Plaintiff contends that the ALJ failed to develop the record regarding Plaintiff's treatment for PTSD (Dkt. No. 10-1, pp. 17-24), inappropriately relied on stale opinions from consulting examiner Dr. Samuel Balderman and treating physician Dr. Priyanka Patnaik, which did not account for Plaintiff's (later developed) hand tremors (Dkt. No. 10-1, pp. 24-28), and failed to address Plaintiff's tremors at Step Two or any subsequent step (Dkt. No. 10-1, pp. 29-3). The Commissioner contends that there were no obvious gaps in the record (Dkt. No. 14-1, pp. 17-20), and substantial evidence

6

supports the ALJ's RFC finding (Dkt. No. 14-1, pp. 20-28). Having reviewed the record, this Court finds that the ALJ erred in failing to obtain Plaintiff's counseling records before assessing her mental ability to perform work. Because remand is warranted on this basis, this Court need not reach Plaintiff's remaining arguments.

**Development of the Record Regarding Plaintiff's PTSD Treatment**

"Social Security proceedings are inquisitorial rather than adversarial." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016) (quoting *Sims v. Apfel,* 530 U.S. 103, 110-11 (2000)). "[I]n light of the essentially non-adversarial nature of a benefits proceeding," an "ALJ, unlike a judge in a trial, must [on behalf of all claimants] . . . affirmatively develop the record. . . ." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (internal quotation marks omitted). This duty includes "investigat[ing] the facts and develop[ing] the arguments both for and against granting benefits." *Sims,* 530 U.S. at 111. Under the applicable regulations, the ALJ is required to develop the claimant's complete medical history. *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)-(f)).

Whether the ALJ has satisfied his or her duty to develop the administrative record is a "threshold question," which a reviewing court must answer before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g). *Craig,* 218 F. Supp. 3d at 261. That is, "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue,* No. 09-CV-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v.*

7

*Sec'y of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez v. Barnhart,* No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.") (citing *Brown v. Apfel,* 174 F.3d 59, 63 (2d Cir. 1999)).

"The duty to develop the record is particularly important where an applicant alleges he is suffering from a mental illness, due to the difficulty in determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace." *Merriman v. Comm'r of Soc. Sec.,* No. 14 Civ. 3510(PGG)(HBP), 2015 WL 5472934, at *19 (S.D.N.Y. Sept. 17, 2015) (internal citations omitted); *Craig*, 218 F. Supp. 3d at 268; *Franklin v. Comm'r of Soc. Sec.*, No. 17-CV-6894-JWF, 2019 WL 1230082, at *2 (W.D.N.Y. Mar. 15, 2019) (holding that "it is the ALJ's duty to develop the record and resolve any known ambiguities, and that duty is enhanced when the disability in question is a psychiatric impairment") (internal citations omitted).

In Plaintiff's case, the record was missing more than a year's worth of counseling records from Blue Cross/Blue Shield, Plaintiff's insurer. Plaintiff testified at the hearing that Blue Cross/Blue Shield provided her with a mental health counselor after she witnessed a woman in her apartment building die from a gunshot wound to the neck in 2015. Tr. at 39-41, 49. According to her testimony, watching the woman die "triggered" Plaintiff's trauma from a rape she endured several years prior, when she was in her early 20s. Tr. at 43-45. When the ALJ asked Plaintiff "why it took so long" between her psychiatric visits to DENT, Plaintiff answered, "Because Blue Cross and Blue Shield gave me a year long mental health counselor over the phone. . . " Tr. at 49.

8

Plaintiff further testified that she met with the counselor over the phone "once a week" in a "one-on-one situation" where she "was able to get things off [her] chest." Tr. at 57.[3] Notwithstanding Plaintiff's testimony about the breadth of her counseling through Blue Cross/Blue Shield, the ALJ did not order or otherwise direct that the records be produced. This created an "obvious gap" in the administrative record. *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016).

In his decision, the ALJ found that Plaintiff's PTSD constituted a severe impairment, but ultimately found that she could perform light work with only one mental health limitation: that she perform unskilled work which would allow her to have a regular work break approximately every two hours. Tr. at 18, 22. It is unclear how the ALJ reached this conclusion without any counseling records. The ALJ noted Plaintiff's testimony about witnessing the woman being shot and her prior rape, as well as records from DENT diagnosing Plaintiff with PTSD and depression. Tr. at 646-47. The ALJ referred dismissively to Plaintiff's therapy as mental health "coaching," and implied that she only participated in it for a short period of time "immediately after the shooting incident." Tr. at 22. Contrary to the ALJ's representations, the record suggests that Plaintiff underwent legitimate counseling with a mental health counselor, albeit over the phone, for a year or more.[4] This shows that Plaintiff's PTSD symptoms were both serious and ongoing.

---

[3] Plaintiff's records from DENT corroborate that Plaintiff received counseling though her insurance company over the phone on a weekly or biweekly basis from a mental health counselor named "Ross." Tr. 526, 647.

[4] This is further substantiated by Plaintiff's treating physician, Dr. Priyanka Patnaik, who diagnosed Plaintiff with PTSD following the shooting and prescribed clonazepam for her symptoms. Tr. at 422, 427. Moreover, it appears that Dr. Patnaik believed that Plaintiff needed

9

The ALJ's inaccuracies and his substantial downplaying of Plaintiff's PTSD symptoms are not harmless given that: the DSM-5, published in 2013, indicates that PTSD is often characterized by "marked alterations in arousal and reactivity," including "[p]roblems with concentration," or "intrusion symptoms associated with the traumatic events," including "intense or prolonged emotional distress" (American Psychiatric Association (2013). *Diagnostic and statistical manual of mental disorders* (5th ed.)); and the VE testified that a person would not be able to perform the jobs identified as appropriate for someone with Plaintiff's designated RFC — specifically, the jobs of photocopy machine operator and/or mail clerk — if she was "off task" more than 10 percent of the time, or had more than one absence per month on an ongoing basis, including arriving late or leaving early (Tr. at 80-81). Clearly, a person suffering from PTSD requiring over a year of counseling, following the types of traumatic events described by Plaintiff, could have issues with concentration and absenteeism that an employer would not tolerate. Because the ALJ did not have Plaintiff's treatment records from Blue Cross/Blue Shield, he could not have known the limitations presented by her PTSD.

The Commissioner argues that it was the duty of Plaintiff's attorney to obtain the Blue Cross/Blue Shield records to prove that his of her client is disabled, and suggests that the attorney's failure to get them shows that there was no obvious gap in the record. This Court does not agree. While a claimant does bear the burden of proof,

---

further counseling. Plaintiff testified at her February 10, 2017 hearing that after she completed counseling through Blue Cross/Blue Shield, her "primary set [her] up with a counselor at UB Medicine right at the office. . ." and the counselor "was supposed to contact [her] . . . ." Tr. at 57.

an ALJ's affirmative duty to develop the record exists even when a social security claimant is represented by counsel. *Pratts*, 94 F.3d at 37; *see also Perez,* 77 F.3d at 47.[5] Remand is appropriate where this duty is not discharged. *See, e.g., Moran,* 569 F.3d at 114-15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

Accordingly, this case is remanded to the Social Security Administration with directions to develop the record relating to Plaintiff's PTSD and its limiting effects on her ability to work.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is hereby GRANTED insofar as it seeks remand, and the

---

[5] "[D]istrict courts in this circuit have reached conflicting conclusions as to whether the ALJ satisfies th[e] duty [to develop the record] by relying on the claimant's counsel to obtain the missing evidence." *Sotososa*, 2016 WL 6517788, at *3 (citing cases within the Second Circuit Court of Appeals reaching different conclusions on this matter). The Second Circuit Court of Appeals has suggested that the ALJ may rely to a certain extent upon claimant's counsel to obtain missing evidence, but has stopped short of holding that an ALJ may delegate his or her duty in its entirety. *See Jordan v. Comm'r of Soc. Sec.*, 142 Fed. Appx. 542, 543, 2005 WL 2176008, at *1 (2d Cir. Sept. 8, 2005) (summary order) (The ALJ satisfied his duty to develop the record by allowing counsel to submit further records, and later contacting counsel to remind him that no evidence had been received and that a decision would be made on the existing record unless such evidence was timely submitted to which claimant's counsel responded that claimant had "nothing further to add"); *Frye ex rel. A.O. v. Astrue*, 485 Fed. Appx. 484, 488 n.2 (2d Cir. 2012) (summary order) (The ALJ fulfilled his duty to develop the record where he "specifically requested the submission of any additional relevant evidence prior to the administrative hearing, held the record open subsequent to the administrative hearing so that counsel could submit additional evidence, contacted counsel when no further evidence was received, and, at counsel's request, granted an extension of time to obtain evidence"). In Plaintiff's case, neither Plaintiff's counsel nor the ALJ took steps to obtain the records. Therefore, the case must be remanded.

Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is DENIED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED: Buffalo, New York
February 20, 2020

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**